IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RACHEL HIGGINS, Personal
Representative of the ESTATE OF
MATTHEW GARCIA,

      Plaintiff,

v.                                                                          No. 1:25-cv-00673-JB-JMR

CITY OF ALBUQUERQUE et al.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on the parties' Joint Motion to Approve

Settlement on Behalf of a Minor. Doc. 91. The Honorable James O. Browning referred the case to

me to conduct a fairness hearing, submit an analysis, including findings of fact, if necessary, and

recommend a final disposition. Doc. 83. I conducted a fairness hearing on June 22, 2026, and I

recommend that the Court approve the settlement of this case on behalf of the minor children, M.G

and A.C.

The Court reviews settlements involving minor children and incapacitated persons for

fairness. *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 30, 99 N.M.

802, 808, 664 P.2d 1000, 1006 ("In passing upon settlements dealing with claims or rights of

minors, the court must determine whether the approval of a compromise would be in the best

interests and welfare of the minor child."), *overruled on other grounds by Montoya v. AKAL Sec.,*

*Inc.*, 1992-NMSC-056, 114 N.M. 354, 838 P.2d 971; N.M. STAT. ANN. § 38-4-16 (settlement on

behalf of an incapacitated person is "subject to the approval of the court in which the suit is

pending").

The Court held a hearing on June 22, 2026, to determine the fairness of the proposed settlement and whether it was in the best interests of M.G. and A.C., whose father, Matthew Garcia, was shot and killed in relation to an encounter with Albuquerque Police Department ("APD") officers. According to the Guardian ad Litem ("GAL") Report, the pertinent facts are as follows:

On the morning of October 18, 2024, Garcia was inside unit 20 at the Tewa Motor Lodge ("TML") when APD officers and the City of Albuquerque Code Enforcement Division ("CED") conducted a code enforcement inspection at the TML. CED and APD had been contacted by the owner and operator of the TML, defendant Amir Nathoo, to assist with removal of individuals he maintained were trespassing on the TML property, scaring other residents, and selling drugs. Notice of the code enforcement inspection was posted on all unit doors to notify inhabitants of the planned inspection.

At a pre inspection briefing with APD, Nathoo provided a list of units that housed people he considered trespassers who were required to leave the property (hereinafter "the List"). Unit 20 was on the List and APD was advised to require all individuals to identify themselves to assist in identification of possible trespassers. Before the code enforcement inspections could begin, all inhabitants of the TML were required to exit the units. On arrival at TML, APD officers began contacting the inhabitants of the various units, including unit 20. At unit 20, APD officers knocked on the door, announced their presence, and requested the inhabitant to open the door.

Garcia opened the door of unit 20 but did not exit the unit. APD officers explained CED was conducting an inspection of the TML and everyone was required to exit the units before the inspection could begin. APD officers asked Garcia to identify himself and confirm he was a tenant of unit 20. Garcia refused to identify himself and denied being a tenant of unit 20.

APD officers advised Garcia he would need to identify himself so they could confirm he was entitled to be on the TML property because all trespassers were being removed. Eventually, Garcia incorrectly identified himself as "Jose Garcia" and provided a date of birth but failed to provide a social security number. APD officers found Garcia's behavior erratic, and they became concerned Garcia might flee. Based on his behavior and continuing refusal to provide his real name, APD officers advised Garcia he was not free to leave and was being detained based on his failure to identify himself. APD officers then handcuffed Garcia and attempted to place him in the back of an APD vehicle. No pat down search was performed. As APD officers attempted to place Garcia in the APD vehicle, he began hitting his head against the vehicle. Garcia maintained he had done nothing wrong and he wanted a lawyer.

After APD officers confirmed Garcia's identity and the existence of three active felony warrants, they asked Garcia to exit the vehicle so they could conduct a pat down search. Garcia refused to exit the vehicle and began to struggle. When asked what Garcia had in his hand, Garcia responded he had a gun. On being told Garcia had a gun, three APD Officers attempted to restrain Garcia and retrieve the weapon. The gun was located on Garcia's lower back behind his cuffed hands, which made attempts to secure the weapon difficult.

According to the GAL report, a review of the police report and videotape of the scene showed that the attempt to restrain Garcia and retrieve his weapon in the confines of the APD vehicle was chaotic. Although one of the officers appeared to successfully retrieve the weapon and remove it from the vehicle before Garcia was shot, the other two officers fired on Garcia, shooting him eleven times. Garcia was pronounced dead at the scene.

Nichole M. Charlebois appeared as the court-appointed guardian ad litem (GAL) for M.G. and A.C. The GAL's report is thorough and details the history of this case. *See* Doc. 96 (amended

3

GAL report). After reviewing various materials as outlined in the GAL report, and after discussing various options with counsel, Ms. Charlebois recommended a tax-free structured settlement plan for each child, each of which is outlined in Exhibit C of the amended GAL report. *See* Doc. 96 at 48–49.

I have considered the evidence and argument presented at the hearing, the GAL report, and the basic terms of the proposed settlement. I find that the proposed settlement meets the four factors set out in *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322 (10th Cir. 1984) that the court considers when deciding whether to approve a settlement. These factors are: "(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable." *Id.* at 324. I also find that the settlement is in the best interests of M.G and A.C. *See Garcia*, 1983-NMCA-047, ¶ 30, 99 N.M. at 808, 664 P.2d at 1006

The parties negotiated this settlement with the assistance of Magistrate Judge Jennifer M. Rozzoni. Plaintiff wrote a demand letter to defendants, and defendants responded. Each party also sent a confidential letter to Judge Rozzoni. *See* Doc. 56. They met with Judge Rozzoni at an in-person settlement conference on Thursday, February 26, 2026. *See* Doc. 74. The children's mother, Bianca Chavez-Garcia,[1] and their grandfather, Fred Garcia, attended the in-person settlement. The parties did not reach a settlement on that date but they continued to negotiate

---

[1] Ms. Chavez-Garcia was identified as Bianca Garcia in the minutes for the settlement conference. She indicated at the fairness hearing that she prefers to be identified as Bianca Chavez-Garcia. She testified at the fairness hearing that although M.G. and A.C. live with their grandfather, Fred Garcia, she sees her children regularly and retains her parental rights over her children. She is the decision-maker with respect to her children.

through Judge Rozzoni. Ms. Chavez-Garcia participated in all aspects of the settlement negotiations, and she understood that she did not have to accept the defendants' offer. She discussed each offer with her attorneys and was able to ask Mr. Smith and Ms. Carpenter questions during the mediation and as the negotiations continued after the in-court mediation. Ms. Chavez-Garcia testified that she was not pressured or coerced into settling the case, and that she thought the settlement was fair and reasonable. She understood that if the case proceeded to trial, her children could get more than the settlement amount or less. She understood that the settlement amount allocated to her children is for their benefit, and that she will not have access to those funds. She also understood that her children will not have access to the funds until they turn eighteen. Ms. Chavez-Garcia would like the Court to approve the settlement. Based on the evidence presented at the hearing and in the GAL report, I find that the settlement was honestly and fairly negotiated.

As outlined in the GAL report, serious questions of law and fact placed the ultimate outcome of continued litigation in doubt. Garcia had an extensive criminal record, an active substance abuse disorder, and active warrants at the time of his death. Police body camera footage shows that Garcia resisted APD's attempts to identify him, secure him in an APD vehicle, and retrieve his weapon. Garcia was belligerent, erratic, and armed, which could have resulted in a defense verdict or a finding of comparative fault that would have eliminated or significantly reduced any potential recovery for the Estate, M.G., or A.C. Further, Garcia's lifestyle, substance abuse, and criminal activity made him an absentee parent. M.G. and A.C. have lived full-time with their grandfather their whole lives and had little meaningful or productive interaction with Garcia during his life. Given the factual realities of Garcia's life and his absence from the lives of his children, a jury could have found insufficient evidence to support an award of damages for their

loss of consortium. In addition, this case was extensively litigated, and several dispositive motions remain outstanding for the trial judge to decide had the case proceeded to trial. The uncertainties relating to the outcome of the pending motions, issues relating to comparative fault, the weakness of the loss of consortium claims, and the uncertainty of any damages if the case proceeded to trial make clear that the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation.

I have reviewed the GAL report and the proposed disposition of the settlement funds. *See* Doc. 96. I agree with the GAL's determination that the 40 percent contingency fee charged by plaintiff's' attorneys in this case is reasonable given the amount of work put into the case and the outcome. Defendants will pay the GAL fees. The children are receiving their statutory share of the total settlement for the civil rights claims, and only the children are receiving compensation for loss of consortium. Garcia's father (Fred Garcia) and Ms. Chavez-Garcia agreed to forego any loss of consortium claims they may have as part of the settlement. The proposed structured settlement is designed to protect the children's assets and not interfere with their ability to collect government benefits, which they both currently receive. I find that the settlement proposed by the parties is fair and reasonable, the portion allotted to M.G. and A.C. is fair and reasonable, the plaintiffs' attorney fees and costs are fair and reasonable, and the settlement is in M.G. and A.C.'s best interests. I also find that the settlement plan as outlined in Exhibit C to the GAL report will safeguard the proceeds from the settlement for the children's benefit, and that the plan will maximize the funds available to the children in their early adulthood as they become independent.

Based on the foregoing, I recommend the following:

1. That the Court find the *Jones* factors are satisfied and approve the proposed settlement agreement;

2. That the Court order payment of the settlement funds be distributed to M.G. and A.C. as outlined in Exhibit C to the amended GAL Report (Doc. 96);

3. That the Court's final order dismissing this case and ordering payment of the settlement funds include the proposed order that will be filed separately under seal, because it contains language required by the trustee managing the settlement funds on behalf of the minor children;

4. That the Court's order for payment of the settlement funds be filed under seal to ensure the minor children's privacy;

5. That the Court release Ms. Charlebois from her duties as guardian ad litem.

_____
Laura Fashing
United States Magistrate Judge